## Huntley *v.* Drummond, et al.

No. 39919       February 13, 1956       85 So. 2d 188

754

*Bethel Ferguson, A. M. Nelson,* Jackson, for appellant.

*L. B. Agnew,* Jackson, for appellees.

ETHRIDGE, J.

This is a suit by appellees Drummond and Essary to enforce a mechanics lien against the automobile of appellant Huntley, and for a personal judgment for the cost of the repairs. It began in the County Court of Hinds County. After hearing considerable testimony, that court, trying the facts and law, rendered a judgment for appel-

lees against appellant in the amount of $150, and adjudicated that appellees had a lien on appellant's car for that sum. The circuit court affirmed that judgment and Huntley has appealed here.

On October 22, 1953, Huntley's 1946 Nash automobile was involved in a collision in the City of Jackson with a car driven by Will Owen. Huntley got Bill Jones' Garage to pick up his wrecked car. He had no insurance on it, and he did not show that Owen had any insurance which might protect him. In fact, it appears that appellant never made any demand upon Owen to reimburse him for damages, and from the record the county judge was warranted in concluding that Huntley's collision with Owen was his own fault. Appellees are in the automobile repair business, and several days after the collision a representative of an automobile insurance company called and instructed them to go to Jones' Garage, pick up a 1946 Nash and repair the damage to the body, since the same was covered by the company's insurance. So appellees went to Jones' lot, and by mistake picked up appellant's 1946 Nash, instead of the other 1946 Nash which was on the back of the lot, and took it to their place of business to repair. Appellees mistakenly thought it was the car the insurance carrier had directed to be repaired.

In the meantime Huntley had learned that appellees had picked up his car to repair it, so on Tuesday he went by to see how the repairs were progressing. Appellees had begun work on the car the day before. During the progress of the work Huntley visited appellees' shop on several occasions, and several times telephoned one of appellees. On these visits and in the telephone calls appellant urged prompt completion of the repairs, and pointed out that he needed the car in his business. He advised appellees and their servants that he was in a rush to get the car completed, and in fact gave tips on two occasions to the mechanic who was doing the actual repairs, complimenting the quality of the work which was

being done. Appellant testified that he thought that an insurance company which had a liability policy on Owen, who collided with him, was paying for the repairs. At any rate, the work was completed by appellees within several days. Appellant then took his car and signed a receipt for it which had printed thereon the following: "This certifies that I have authority, and hereby authorize repair work described above, with necessary parts, to be listed at your regular prices. I agree to pay cash on delivery, or on terms satisfactory to you; until paid in full this shall constitute a lien on the machine or implement repaired." The bill for the repairs was $212.07, for which appellees sued appellant. Several days later, appellees found out that they had repaired the wrong car, but appellant refused to pay for the job. Appellant is continuing to use his car, although on the trial he contended that the repairs were poorly done and the charge was excessive.

■■■ A mechanics lien is created by Code of 1942, Section 353, which provides in part: "All carriages, buggies, wagons, plows, or any article constructed, manufactured or repaired for any person, and at his instance, shall be liable for the price of the labor and material employed in constructing, manufacturing, or repairing the same; . . . " This statute further provides that a mechanic may retain possession of the property and that he has a lien on it. Under Section 355, if the lienholder parts with possession, he retains a lien to the extent that is allowed in cases of liens for purchase money of goods, and he may enforce the same in that manner. Section 337 creates the purchase money lien, and Section 341 provides that suit may be initiated by affidavit. See Also Sections 342-350. Section 350 authorizes a judgment for the amount of the obligation and for the lien. So if the facts support the finding of the trial court that a lien exists, the judgment was proper for both the debt and the lien.

Hannan Motor Company v. Darr, 212 Miss. 870, 56 So. 2d 64 (1952).

██ Code Section 353 requires that the repairs upon which the lien is based must be done "at his instance", referring to the owner of the property. This clearly contemplates a situation where the owner has consented either expressly or implied for the doing of the repairs. De Van Motor Company v. Bailey, 177 Miss. 441, 171 So. 342. 57 C. J. S., Mechanics Liens, Section 73, p. 578, states the test as to implied consent: "The consent of the owner may be either express or implied. Where there is no express consent, the facts from which the inference of consent is to be drawn must be such as to indicate at least a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with the knowledge of the object for which they are employed." ██ Moreover, the question of agreement or consent, or whether the repairs have been done at the instance of the owner under Section 353, presents on conflicting evidence a question of fact for the trier of fact. 57 C. J. S., Mechanics Liens, Section 314, p. 994. ██ It is sufficient if the owner instigates or in some way procures the repairs to be made on his property.

██ Furthermore, the doctrine of estoppel in favor of a mechanics lien has been applied in this state and elsewhere against the owner who knowingly stands by without disclosing the facts and who procure and obtains the doing and completion of the repairs. 36 Am. Jur., Mechanics Liens, Section 81. In this respect, Harper Foundry and Machine Company v. Cammack,—— Miss. ——, 57 So. 2d 490 (1952) is substantially in point. There it was held that the jury had the right on proper instructions to find that the owner had made an implied contract by estoppel in favor of the mechanic who performed repairs upon a diesel engine owned and used by

appellee in the operation of his cotton gin. The owner contended that he had contacted with a mechanic named Wigley and had paid him in advance for the repairs. Wigley apparently considered the job too big for him and had taken the engine to appellant's plant in Jackson. On several occasions during the progress of the work in appellant's plant, appellee visited the shop and inquired how Wigley, who was working there, was getting along with the engine, and urged appellant to do the job as well as possible. It was said that it was a question for the jury as to whether or not appellee's concealment from appellant of the fact that he had contract with Wigley, at a time when appellee knew that the work was being done in appellant's shop, resulted in an implied contract by estoppel on the part of appellee, to pay appellant the value of the repairs.

In the present case, we think that it was a question of fact for the trial court to determine, first, whether Huntley impliedly consented to and procured and obtained the repairs on his car; and second, whether appellant's conduct in visiting appellees shop, urging completion of the work, and signing the quoted receipt under all of the circumstances, and with the knowledge that he had no insurance, constituted such careless and unreasonable conduct as to estop him from asserting that he did not consent to the repairs and that they were not at his instance. On both grounds the judgment should be and it is affirmed. There is no merit in the other assignments of error.

Affirmed.

*Roberds,* P. J., and *Lee, Arrington* and *Gillespie,* JJ., concur.